UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FRANZUA RENZO ZULOETA
RAMIREZ GASTON,

    Petitioner,

v.                                                                               Case No: 6:24-cv-1411-JSS-LHP

CYNTHIA ISABEL CHAVEZ
GUTIERREZ,

    Respondent.
_____/

## ORDER

    Petitioner Franzua Renzo Zuloeta Ramirez Gaston moves ex parte, through a Verified Motion, for a temporary restraining order against Respondent Cynthia Isabel Chavez Gutierrez, in conjunction with a Verified Petition for the Return of Minor Child Pursuant to International Treaty and Federal Statute (Verified Petition, Dkt. 1). (Verified Motion, Dkt. 2.) Upon consideration, the court grants the Verified Motion.

## BACKGROUND

    Petitioner and Respondent are the parents of a minor child, J.M.S.R.G.C. (the Child). (Dkt. 1 at 1.) Petitioner is a citizen of Peru. (*Id.* ¶ 16.) He had an ongoing relationship with Respondent that resulted in the birth of the Child in Ocala, Florida, in 2020. (*Id.* ¶¶ 1, 19a, 23.) Petitioner and Respondent "resid[ed] separately since the [C]hild's birth" but "jointly exercised parental and custodial rights under Peruvian law." (*Id.* ¶ 23.) Until December 2023, the Child habitually resided in Lima, Peru.

(*Id.* ¶¶ 19a, 23.) The Child "established relationships with extended family and friends residing in Peru" and attended a daily day care in Lima until Respondent removed him. (*Id.* ¶¶ 23, 27.)

Petitioner regularly exercised his custody rights as to the Child until 2022, when Respondent refused to allow Petitioner to see the Child anymore. (*Id.* ¶ 19b.) Petitioner tried many times since 2022 to contact the Child and Respondent. (*Id.* ¶ 8.) Respondent blocked Petitioner on her telephone. (*Id.*) Petitioner tried using the WhatsApp communication application but could not contact the Child or Respondent. (*Id.*) In 2022, Petitioner initiated visitation proceedings, and in 2023, a Peruvian court established five days per week visitation with the Child for Petitioner. (*Id.* ¶¶ 1, 8.)

In December 2023, Respondent was in a relationship with Juan Alberto Elias Valdivia. (*Id.* ¶ 2.) Valdivia had a history of child abuse, including an incident in 2018 involving a different child. (*Id.* ¶ 3.) While proceedings were pending against Respondent and Valdivia for sexual misconduct involving the Child, Respondent used falsified documents to migrate from Peru to the United States without Petitioner's consent. (*Id.* ¶¶ 2, 19.) Specifically, she falsified Petitioner's signature and fingerprint on a Travel Authorization Permit before a notary. (*Id.* ¶ 2.) Valdivia, Respondent, and the Child traveled to the United States on December 19, 2023, presumably together. (*Id.* ¶ 4.) Since then, Respondent terminated all contact with Petitioner and concealed her and the Child's whereabouts. (*Id.* ¶ 29.) Respondent and the Child are

thought to reside in Windermere, Florida, at present. (*Id.* ¶ 22.) Petitioner has been unable to exercise his visitation rights as to the Child since Respondent removed the Child from Peru without Petitioner's consent. (*Id.* ¶ 28.) Petitioner has diligently pursued the return of the Child and obtained counsel to assist him in the endeavor. (*Id.* ¶ 10.)

On July 31, 2024, Petitioner filed the Verified Petition seeking the return of the Child to Peru. (*See id. passim*.) Petitioner also filed the Verified Motion seeking a temporary restraining order directing the United States Marshal Service or other law enforcement authority to remove the Child from Respondent's control and serve Respondent with notice of these proceedings; granting temporary physical custody of the Child to Petitioner or Petitioner's agent pending a resolution of the petition; requiring Respondent to remain in the jurisdiction of the court, surrender her and the Child's travel documents, and appear and show cause why the Child should not be returned; setting an expedited final hearing on the merits of the Verified Petition; and ordering that the Child be returned to Peru. (Dkt. 2 at 12–13.)

## APPLICABLE STANDARDS

Temporary restraining orders are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." *United States v. Kaley*, 579 F.3d 1246, 1264 (11th Cir. 2009) (Tjoflat, J., specially concurring) (quoting 11A C. Wright, A. Miller, & M. Kane, *Fed. Prac. and Proc.: Civil* § 2951, at 253 (2d. ed. 1995)). A court may issue a temporary restraining order without notice to the adverse party only upon a showing that "immediate and

irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). A temporary restraining order "must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Fed. R. Civ. P. 65(b)(2). A temporary restraining order may not remain in effect for more than fourteen days, unless the court grants an extension for good cause or the adverse party consents to an extension. *Id.* "The reasons for an extension must be entered in the record." *Id.* A legal memorandum in support of a motion for a temporary restraining order must establish: "(1) the likelihood that the movant ultimately will prevail on the merits of the claim, (2) the irreparable nature of the threatened injury and the reason that notice is impractical, (3) the harm that might result absent a restraining order, and (4) the nature and extent of any public interest affected." M.D. Fla. Loc. R. 6.01(b); *accord Gonzalez v. Solin*, No. 8:22-cv-1091-CEH-JSS, 2022 U.S. Dist. LEXIS 99760, at *4 (M.D. Fla. June 3, 2022).

## ANALYSIS

Upon consideration of the Verified Petition and Verified Motion, the court concludes that Petitioner has satisfied his burden to warrant entry of the requested temporary restraining order.

Initially, the court finds that Petitioner has sufficiently established a likelihood of success on the merits of his Verified Petition and an immediate and irreparable

injury requiring the issuance of a temporary restraining order. In the Verified Petition, Petitioner seeks relief pursuant to the Hague Convention on the Civil Aspects of International Child Abduction. (Dkt. 1.) *See* Int'l Child Abduction Convention Between the United States of Am. & Other Governments Done at the Hague Oct. 25, 1980, T.I.A.S. No. 11670, 1988 WL 411501 (the Hague Convention). The Hague Convention "furthers its goal of 'discourag[ing] child abduction,' by requiring signatory states to make available a remedy whereby parents of abducted children can bring proceedings to compel the return of their children who have been taken to foreign countries." *Fernandez v. Bailey*, 909 F.3d 353, 358–59 (11th Cir. 2018) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014), and citing Hague Convention arts. 7, 12). Congress implemented the Hague Convention through the International Child Abduction Remedies Act (ICARA) of 1988, which confers jurisdiction upon this court to resolve actions brought under the Hague Convention. 22 U.S.C. §§ 9001–9011; *see Fernandez*, 909 F.3d at 359. Under the ICARA, a court "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a).

To succeed on a petition filed under the Hague Convention, Petitioner must establish (1) that the Child was habitually resident in Peru at the time Respondent removed the Child to the United States; (2) that the removal was without Petitioner's consent and constituted a wrongful breach of his custody rights under Peruvian law; and (3) that Petitioner was actually exercising those custody rights at the time of the

removal. *See Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014) (citing Hague Convention art. 3 and *Ruiz v. Tenorio*, 392 F.3d 1247, 1251 (11th Cir. 2004)); *see also* 22 U.S.C. § 9003(e)(1) (requiring that a petitioner establish by a preponderance of the evidence that "the child has been wrongfully removed or retained within the meaning of the Convention").  Petitioner has submitted evidence to support each of these requirements.  Specifically, Petitioner alleges in the Verified Petition that the Child was a habitual resident of Peru and that Petitioner was exercising his visitation rights until Respondent removed the Child from Peru. (*E.g.*, Dkt. 1 ¶¶ 8, 19, 23.)  The court finds this evidence sufficient to demonstrate a likelihood that Petitioner will succeed on the merits of the Verified Petition.  *See, e.g.*, *Romanov v. Soto*, No. 3:21-cv-779-MMH-MCR, 2021 U.S. Dist. LEXIS 167637, at *3 (M.D. Fla. Sep. 3, 2021) ("Upon review of the Verified Petition, the Court determines that some relief is warranted to assure the continued availability of the Minor Children pending a hearing on the merits of the Verified Petition.").

Petitioner has further submitted evidence to support the irreparable nature of the threatened injury and the reason that notice is impractical.  Petitioner alleges an irreparable injury of Respondent further absconding with the Child. (*See* Dkt. 1 ¶¶ 42–43.)  Petitioner further alleges that Respondent concealed the Child's whereabouts and cut off all contact between Petitioner and the Child. (*Id.* ¶ 29.)  This evidence indicates that Respondent may attempt to further conceal the Child and hinder these proceedings, causing irreparable injury to Petitioner. *E.g.*, *Gonzalez v. Solin*, No. 8:22-cv-1091-CEH-JSS, 2022 U.S. Dist. LEXIS 99760, at *7; *Watson v. Watson*, No. 8:22-

cv-2613-WFJ-TGW, 2022 U.S. Dist. LEXIS 208167, at *4 (M.D. Fla. Nov. 16, 2022) ("ICARA permits a court to 'prevent the child's further removal or concealment before the final disposition of the petition.'").

The court further finds that the public interest is served by enforcing the Hague Convention through the ICARA, which "empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4); *see also Watson*, 2022 U.S. Dist. LEXIS 208167, at *5 ("[I]ssuing the requested temporary restraining order would not be against the public interest.").

Petitioner seeks the removal of the Child from Respondent's control. With respect to provisional remedies, such as a temporary restraining order under the ICARA, a court may not "order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 22 U.S.C. § 9004(b). Under Florida law, a petitioner seeking enforcement of a child custody determination "may file a verified application for the issuance of a warrant to take physical custody of the child if the child is likely to imminently suffer serious physical harm or removal from this state." Fla. Stat. § 61.534(1). "If the court, upon the testimony of the petitioner or other witness, finds that the child is likely to imminently suffer serious physical harm or removal from this state, it may issue a warrant to take physical custody of the child." Fla. Stat. § 61.534(2). Here, Petitioner alleges that Valdivia had a history of child abuse and was in a relationship with Respondent when Valdivia, Respondent, and the Child left Peru together. (Dkt. 1 ¶¶ 2–4.) Petitioner

further alleges that they left when proceedings were pending against Respondent and Valdivia for sexual misconduct involving the Child. (*Id.* ¶ 2.) Based on these verified allegations, the court finds that the Child is likely to imminently suffer serious physical harm. Thus, Respondent shall bring the Child in person to the initial status hearing in this case, and Petitioner shall attend the initial status hearing in person.

## CONCLUSION

Accordingly, Petitioner's Verified Ex Parte Motion for Temporary Restraining Order (Dkt. 2) is **GRANTED**:

1. The United States Marshal Service shall immediately serve Respondent with the Verified Petition (Dkt. 1), the Verified Motion (Dkt. 2), and this order. Such service shall be made at Respondent's address: 11500 Citra Circle, Apt. 307, Windermere, FL 34786. In the event that the United States Marshal is unable to serve Respondent in accordance with this paragraph, the United States Marshal shall promptly notify the court.

2. Upon service by the United States Marshal, Respondent is **ORDERED** to surrender each of her and the Child's passports, visas, or other travel documentation, if any, to the United States Marshal. Any and all travel documents seized by the United States Marshal shall be held by the Clerk of Court pending further order of the court.

3. Respondent is further **ORDERED** to remain within the jurisdiction of this court pending resolution of this matter; and to refrain from taking any action, or

aiding and abetting others to take any action, to remove the Child from the jurisdiction of this court, or to obtain replacement travel documents for herself or the Child. Respondent shall also immediately advise the court of any change to her residence or the residence of the Child.

4. Respondent is further **ORDERED** to appear at an initial status hearing before the undersigned on August 15, 2024, at 12:30PM in Courtroom 6C, George C. Young United States Courthouse Annex, 401 W. Central Boulevard, Orlando, Florida. Respondent is **ORDERED** to bring the Child to the initial status hearing in person. Petitioner is also **ORDERED** to attend the initial status hearing in person. Following the initial status hearing, the court will set an evidentiary hearing on the merits of Petitioner's Verified Petition.

**ORDERED** in Orlando, Florida, on August 1, 2024, at 3:15PM.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties